IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| SUSAN CALLAHAN as TRUSTEE of the CALLAHAN CHILDREN EDUCATIONAL SUPPORT TRUST,<br><br>      Plaintiff,<br>  v.<br><br>THE CHICAGO SERIES OF LOCKTON COMPANIES, LLC, a series established by LOCKTON COMPANIES, LLC, an Illinois Series Limited Liability Company,<br><br>      Defendant,<br><br>THE UNITED STATES OF AMERICA<br><br>      Defendant and<br>      Counterclaim Plaintiff,<br><br>SUSAN F. CALLAHAN, individually and as TRUSTEE OF THE CALLAHAN CHILDREN EDUCATIONAL SUPPORT TRUST, and JOHN P. CALLAHAN,<br><br>      Counterclaim Defendants. | No. 14 C 3366<br><br>Judge Robert W. Gettleman |

## MEMORANDUM OPINION AND ORDER

Plaintiff Susan Callahan ("Susan"), as trustee of the Callahan Children Educational Support Trust (the "Trust"), filed a four-count complaint against the United States of America and the Chicago Series of Lockton Companies, LLC ("Lockton"), contesting an Internal Revenue Service ("IRS") tax levy on a note in favor of Susan's former husband John Callahan ("John") in the original sum of $574,855.20 (the "Lockton Note"). Counts I through III are against the United States for return of allegedly wrongfully levied property. Count IV, which

asserted a claim for breach of contract against Lockton for acquiescing to the IRS levy against the balance of the Note, was dismissed by this court on February 12, 2015.

The United States filed a counterclaim against Susan, individually and as trustee of the Trust, and John, seeking, among other things, a judgment finding that: (1) it " has valid and subsisting tax liens on the property transferred by John Callahan to Susan Callahan, individually or as Trustee for the benefit of the Callahan children, through the McLean County divorce action, that prime all other claims against the property;" (2) "the seizure of funds due under the Lockton Note by IRS levy was a proper exercise of the United State's [sic] power to collect Internal Revenue Tax;" and (3) the transfer of the Lockton Note by John to Susan, individually or as trustee, was a fraudulent transfer under the Illinois Uniform Fraudulent Transfer Act §§ 740 Ill. Comp. Stat. 160/5-160/6. The United States' counterclaim also seeks an order requiring Susan to turnover "property transferred by John Callahan to Susan Callahan, individually or as Trustee for the benefit of the Callahan children . . . to the extent of John Callahan's delinquent income tax debts."

Presently before the court is Susan's motion for summary judgment and the United States' cross-motion for summary judgment as to all of Susan's claims and partial summary judgment as to its fraudulent transfer claim. For the reasons discussed below, the court denies Susan's motion and grants in part and denies in part the United States' motion.

# **BACKGROUND**[1]

In April 2009, John terminated his employment with Lockton, at which time he received the Lockton Note with a face value of $574,855.20. The Note was payable on April 16th of each year beginning in 2009 through 2012 in equal installments of $73,038.13, along with accrued interest, with a final balloon payment of $195,004.00[2] due on April 16, 2013. On November 23, 2009, the IRS assessed John with an unpaid tax liability of over $173,000.00. The IRS filed a Notice of Federal Tax Lien against John with the DuPage County Recorder of Deeds on May 21, 2010. John, however, lived in Will County, Illinois at the time the notice was filed.

On November 24, 2010, Susan and John officially separated, at which time the McLean County Circuit Court entered an Order for Support and Property Division, awarding the Lockton Note to Susan, "as and for educational support for the [Callahan] children to be held in trust however, for her children and the proceeds to be used for their educational expenses." On April 29, 2011, John paid the IRS $60,000 from the Lockton Note for application to his unpaid tax liabilities. The Callahan marriage was dissolved on September 9, 2011, by a Judgment of Dissolution of Marriage entered by the McLean County Circuit Court, ratifying a Marital Settlement Agreement signed by Susan and John on August 29, 2011. The Marital Settlement Agreement provided that Susan was to receive the balance of the Lockton Note "without any limitation as to an April 2012 tax or other payment; in trust as and for educational support for the children, with the proceeds to be used for their reasonable educational expenses (including living

---

[1] The following facts are, unless otherwise specified, undisputed and come from the parties' Local Rule 56.1 statements and responses.

[2] The United States disputes the dollar amount of the final balloon payment, arguing that the Note did not contain a specific dollar figure.

expenses while enrolled in an educational institution).". The settlement agreement also required John to assume liability for all marital and individual debts. In addition to the settlement agreement, the Judgment of Dissolution of Marriage also incorporated a Joint Parenting Agreement in which John was ordered to pay child support and the children's college expenses.

On April 9, 2012, John assigned the Note to Susan, directing Lockton to "make all payments due . . . [on the Note] directly to SUSAN F. CALLAHAN." Thereafter, Susan received the April 2012 Note payment from Lockton. John informed the IRS on February 5, 2013, that the Lockton Note had been transferred to Susan as a part of their divorce proceedings. After being served a Notice of Levy by the IRS, Lockton made the final balloon payment of $195,004.00 to the IRS in April 2013. John filed for Chapter 7 bankruptcy in July 2013.

## DISCUSSION

**A.      Legal Standard**

A movant is entitled to summary judgment pursuant to Fed. R. Civ. P. 56 when the moving papers and affidavits show that there is no genuine issue of material fact and the movant is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). Once a moving party has met its burden, the nonmoving party must go beyond the pleadings and set forth specific facts showing there is a genuine issue for trial. See Fed. R. Civ. P. 56(c); Becker v. Tenenbaum–Hill Assoc., Inc., 914 F.2d 107, 110 (7th Cir. 1990). The court considers the record as a whole and draws all reasonable inferences in the light most favorable to the party opposing the motion. See Green v. Carlson, 826 F.2d 647, 651 (7th Cir. 1987).

A genuine issue of material fact exists when "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). The nonmoving party must, however, "do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). "The mere existence of a scintilla of evidence in support of the [nonmoving party's] position will be insufficient; there must be evidence on which the jury could reasonably find for the [nonmoving party]." Anderson, 477 U.S. at 252.

**B.     Analysis**

Susan argues that the IRS's levy of the balance of the Lockton Note was wrongful, and therefore should be returned to her for three alternative reasons: (1) that "[b]y virtue of the Judgment of Dissolution of Marriage, [she] became a 'judgment lien creditor' of John Callahan under § 6323(a) of the Internal Revenue Code ('the I.R.C.'), and has a superior claim to note proceeds over the IRS;" (2) "she was a purchaser [of the Note] under the I.R.C. § 6323(a)," giving her a superior claim to the Note; and (3) because "the note payment was intended as child support," it was not eligible for levy pursuant to I.R.C. § 6323(a)(8). According to Susan, no issues of material fact exist as to any of these alternative arguments, making summary judgment appropriate. The United States, however, argues that as a matter of law Susan is neither a judgment lien creditor nor a purchaser, and that the Note proceeds are not exempt from an IRS levy as child support. Moreover, the United States argues that summary judgment in favor of Susan is precluded because, as a matter of law, the Note's transfer from John to Susan was fraudulent.

### 1. § 6323(a) Protection

Susan argues that the tax lien imposed by the IRS was invalid against the Note because she is a judgment lien creditor or, in the alternative, a purchaser, and therefore protected by I.R.C. § 6323(a). I.R.C. § 6321 provides that "If any person liable to pay any tax neglects or refuses to pay the same after demand, the amount (including any interest, additional amount, addition to tax, or assessable penalty, together with any costs that may accrue in addition thereto) shall be a lien in favor of the United States upon all property and rights to property, whether real or personal, belonging to such person." 26 U.S.C.A. § 6321. The lien imposed by § 6321 arises when the IRS makes an assessment and continues "until the liability for the amount so assessed . . . is satisfied or becomes unenforceable by reason of lapse of time." 26 U.S.C.A. § 6322.

However, pursuant to I.R.C. § 6323(a), a lien imposed by § 6321 is not valid against certain third parties without proper notice. A federal tax lien has priority over a third-party purchaser, holder of a security, mechanic's lienor, or judgment lien creditor, only where the IRS has served proper notice of its lien before the third-party's interest has been perfected. Id. ("The lien imposed by section 6321 shall not be valid as against any purchaser, holder of a security interest, mechanic's lienor, or judgment lien creditor until notice thereof which meets the requirements of subsection (f) has been filed by the Secretary."). According to Susan, because she is a judgment lien creditor or, in the alternative, a purchaser, the IRS's improperly filed tax lien was invalid against her pursuant to § 6323(a).

The United States does not dispute that under Illinois law the IRS improperly filed the Notice of Federal Tax Lien against John by filing it in DuPage County when John lived in Will County. However, the United States argues that Susan does not qualify as either a judgment lien

creditor or a purchaser of the Note, and therefore its assessment of John's assets was sufficient to impose a federal tax lien over all of John's property, giving the United States priority over Susan's interest in the Note.

### i. Judgement Lien Creditor

Susan first argues that the IRS's tax lien is invalid pursuant to I.R.C. § 6323(a) because she is a judgment lien creditor. According to Susan, she qualifies as a judgment lien creditor under Treasury Regulation § 301.6323(h)-1(g) because the award of the Lockton Note to her as a part of the Judgment of Dissolution of Marriage ratifying the Marriage Settlement Agreement is a valid judgment entered by a court of competent jurisdiction, awarding specifically designated property.[3] The court disagrees.

As discussed above, Susan was first "awarded the Lockton promissory note" on November 24, 2010, as a part of the Order for Support and Property Division. Susan's award of the Note was "confirmed," as a part of the parties' Amended Marital Settlement Agreement on August 29, 2011. The settlement agreement slightly modified the award, stating that "[t]he entire remaining balance of the 'LOCKTON' Promissory Note and the Petitioner's right to receive payments under [the Note] is now awarded to the Petitioner." Several days later, on September 9, 2011, the Circuit Court of McLean County issued a Judgement of Dissolution of Marriage, incorporating the Marital Settlement Agreement.[4]

---

[3] 26 C.F.R. § 301.6323(h)-1(g) defines a "judgment lien creditor" as "a person who has obtained a valid judgment, in a court of record and competent jurisdiction, for the recovery of specifically designated property or for a certain sum of money."

[4] The court notes that the Judgment of Dissolution of Marriage referred to the "Marital Settlement Agreement," not the "Amended Marital Settlement Agreement." Because the parties
(continued...)

Because Susan was awarded the Lockton Note through the Order for Support and Property Division, she was already the Note owner at the time the McLean County court issued the final divorce judgment. The Judgment of Dissolution of Marriage, the only valid judgment in the parties' divorce proceedings,[5] therefore, did not award any property to Susan, as required by the Treasury Regulation. Property already owned cannot be awarded. See In re Suarez, 182 B.R. 916, 922 (Bankr. S.D. Fla. 1995) (holding that where former spouse was awarded sole title to the marital residence, the divorce decree "did not create a 'lien' at all," because the divorce judgment was merely "an order reordering pre-existing property interests of the parties") (internal quotations omitted). Without an award of specifically designated property that Susan did not already own, she does not qualify as a judgment lien creditor. See Moroch v. United States, 647 F. Supp. 2d 137, 140-41 (D. Conn. 2009) (holding that the plaintiff is not a creditor because her interest in the property was not an interest in the property of another).

In support of her position that in Illinois "[a]n ex-spouse can achieve judgment lien creditor status by virtue of a divorce," Susan relies on three cases. These cases, however, do not persuade the court that Susan is a judgment lien creditor. In United States v. Taylor, 338 F.3d

---

[4](...continued)
appear to treat the Amended Marital Settlement Agreement, and not the original Marital Settlement Agreement, as the document incorporated into the Judgment of Dissolution of Marriage, the court will do so for purposes of this opinion.

[5] Under Illinois law, the Order for Support and Property Division and Amended Marital Settlement Agreement are not valid judgments for purposes of imposing a lien. See, e.g., In re Marriage of Souleles, 444 N.E.2d 721, 725 (Ill. App. Ct. 1982) ("A final judgment is one which disposes of the rights of the parties, upon the entire controversy or upon a definite and distinct part thereof.").

947 (8th Cir. 2003), the court held that the ex-wife's 90 percent interest in her ex-husband's retirement plan awarded to her in divorce proceedings qualified her as a judgment lien creditor with priority over a federal tax lien. Unlike here, the divorce judgment in Taylor awarded the ex-wife an interest in property that she previously did not have. Id. at 949.

The same circumstances existed in In re Estate of Harless, 98 F. Supp. 2d 1337 (S.D. Ala. 2000), where the district court found that the plaintiff qualified as a judgment lien creditor following a divorce judgment awarding her three $1 million alimony payments over a three-year period. Similar to the Taylor case, and unlike the facts in the instance case, the ex-wife in Harless did not have a claim to the awarded $3 million prior to the divorce judgment. Id. at 1338. Moreover, upon obtaining the money judgment against her former husband, the ex-wife recorded it against his real property in order to secure payment. Id. Unlike Susan, the Harless spouse qualified as a creditor because she had a judgment awarding her property (alimony) to which she previously did not have rights, thereby creating an interest in the property of another. See Moroch, 647 F. Supp. 2d at 140-41.

Although Carter v. United States, 216 F. Supp. 2d 700 (W.D. Tenn. 2002), is factually similar to the instant case, it too is distinguishable in the same way that Harless and Taylor are distinguishable. Again, contrary to the present case, the Carter plaintiff was awarded specifically designated property, a mutual fund account, that she previously did not own by a final judgment of divorce. Id. at 701. Consequently, the court is unpersuaded by the Carter court's treatment of the ex-spouse as a judgment lien creditor.

The distinction Susan attempts to make between the effect of conveying real versus personal property is similarly unconvincing. The Treasury Regulations do not distinguish

9

between the two types of properties, nor does the case law. 26 C.F.R. § 301.6323(h)-1(g). Had Congress wanted to limit judgment lien creditor status to awards of personal property, it would have done so. Consequently, as a matter of law, Susan is not a judgment lien creditor.

### ii. Purchaser

Susan next argues that she is a purchaser of the Note, and therefore protected against the federal tax lien pursuant to I.R.C. § 6323(a). Susan contends that under the Joint Parenting Agreement, John had a continuing obligation to pay for his children's educational expenses. However, because she accepted the Note on behalf of the Trust, John was relinquished from making future payments towards their children's educational expenses in an amount equal to the value of the Note proceeds. Susan also argues that John "gave up the Note in exchange for [her] agreement not to pursue additional maintenance." According to Susan, this exchange was sufficient consideration for purposes of making her a purchaser under I.R.C. § 6323(a). The court again disagrees.

As Susan recognizes, to qualify as a "purchaser" under I.R.C. § 6323(a), she must have acquired the Note "for adequate and full consideration in money or money's worth." I.R.C. § 6323(h)(6). The record, however, establishes that Susan, as trustee, did not provide any consideration for the Note. Instead of releasing John from an obligation to pay for the children's educational expenses, as Susan contends, the divorce agreements impose that very obligation. Specifically, paragraph nine of the Joint Parenting Agreement, which was incorporated into the Judgment of Dissolution of Marriage, states that John "shall be responsible for each child's undergraduate college education expenses." Although the agreement provides that scholarships or grants will be used to offset John's obligation to pay for college expenses, nowhere does the

10

agreement articulate that the Note offsets any of his responsibility for paying for the children's educational expenses. Nor is this release included in Article Seven of the couple's Amended Marital Settlement Agreement, which specifically releases John and Susan from certain other obligations and rights.

Similarly, there is no indication in the divorce agreements that by transferring the Note, Susan released her right to seek future maintenance payments from John. Conversely, the Amended Marital Settlement Agreement specifically provides that the issue of maintenance would be reserved. Unlike in Moroch, where the divorcing spouses executed an agreement in which the ex-husband conveyed his ten percent interest in future sale proceeds from real property to his ex-wife in return for her releasing him from past due support payments, Moroch, 647 F. Supp. 2d at 139, there is no evidence here that Susan gave up anything in exchange for the Note. As a matter of law, Susan does not qualify as a purchaser of the Note pursuant to I.R.C. § 6323(a).

### 2. Child Support

Finally, notwithstanding her status under I.R.C. § 6323(a), Susan argues that because the Note "funds were intended as child support to be used for the children's education," they are exempt from the IRS's tax levy. I.R.C. § 6334(a)(8) provides that "If the taxpayer is required by judgment of a court of competent jurisdiction, entered prior to the date of levy, to contribute to the support of his minor children, so much of his salary, wages, or other income as is necessary to comply with such judgment" shall be exempt from levy. According to Susan, the Lockton Note proceeds were a part of John's "income," awarded by a court of competent jurisdiction, to contribute to the support of his children, and therefore should not have been levied by the IRS.

11

Susan contends that "at a minimum, [the United States] must return levied note proceeds in an amount equal to the estimated future cost of college education, including tuition, fees, travel, and room and board, for the Callahan's youngest child, currently aged 13."

The court finds that the Note proceeds are not exempt from levy pursuant to I.R.C. § 6334(a)(8). First, at the time the McLean County Court issued the Judgment of Dissolution of Marriage, three of the four Callahan children were over 18 years of age. Accordingly, I.R.C. § 6334(a)(8), which exempts support obligations to *minor* children, is inapplicable to Note proceeds intended to benefit the adult Callahan children.

Second, as the United States points out, the divorce agreements indicate that the Note proceeds were intended for college expenses, not child support. The Amended Marital Settlement Agreement states that the Note proceeds are "for educational support for the children, with the proceeds to be used for their reasonable educational expenses (including living expenses while enrolled in an educational institution)." While "educational expenses" could arguably include expenses associated with the couple's minor child's primary education, Susan's own testimony bellies this assertion. During her deposition, Susan testified that the purpose of the promissory note payments was "to help the kids with their college." John confirmed Susan's testimony, explaining at his deposition that he and Susan had agreed that Note proceeds "would go to the children to pay for college." Moreover, John's child support obligations were established separate and apart from any discussion of the Note, requiring him to pay $7,500 a month in child support for his single minor child. Accordingly, as a matter of law, Note proceeds were not exempt from levy under I.R.C. § 6334(a)(8).

### 3. Fraudulent Transfer

In addition to seeking summary judgment as to Susan's claims, the United States has also moved for summary judgment as to its counterclaim for fraudulent transfer. The United States argues that the transfer of the Note from John to Susan "in the divorce action was and continues to be a fraudulent transfer as to the United States that is voidable under the Illinois Uniform Fraudulent Transfer Act, §§ 740 Ill. Comp. Stat. 160/5-160/6 ." In rejecting Susan's claims above, however, the court has already ruled that the United States has a superior interest in the Note, therefore entitling the IRS to the Note proceeds. Accordingly, there is no need to determine whether the transfer of the Note to Susan was fraudulent, and, as such, the court denies the United States' motion for partial summary judgment as to its fraudulent transfer claim as moot.

### CONCLUSION

For the reasons discussed above, the court denies Susan's motion for summary judgment and grants in part and denies in part the United States' motion for summary judgment. The United States' motion for summary judgment as to Susan's claims is granted. The United States' motion for partial summary judgment as to its counterclaim for fraudulent transfer is denied.

**ENTER:      July 29, 2015**

_____
**Robert W. Gettleman
United States District Judge**